Good morning. May it please the court, Christopher Sender on behalf of the petitioner, Julio Lozada, would like to reserve two minutes of my time for rebuttal. This court must decide in favor of the petitioner because he prevails equally under the categorical and also under the modified categorical approach. Turning first to the categorical approach. Let me ask you something. Yes. Did we breach that? As I understand it, the EIA assumed that there was not a categorical coverage, and it only decided it. So don't we just make the same assumption? Well, I would say no. I think the most important reason is this whole case went up prior to all the Supreme Court precedent decisions. It began at this. They assumed it was not categorical, so that's in your favor. So why don't we just assume the same thing? Well, I think he went through the categorical more conclusively. I'd like to kind of swim back to him and not believe that argument. I think he does also live under the modified categorical approach. Just quickly, there's a five-step approach under the categorical. The first is to identify the general definition. Everybody pretty much assumes that fraud is an element of the offense to be a set empty, crime involving moral turpitude. And as the court just mentioned, the EIA did concede that 13206A3 is not a crime involving moral turpitude. That's the third prong. Not a CIMT because there was no intent to defraud. So I've only been doing this for 25 years, and I do not like lawyers that read, tell us your arguments, and tell us why you're quiet, and you believe them. Basically, they know you can read your briefs, and you can read the written stuff. A lot of the argument under the categorical approach wasn't in the briefs because, again, it was briefed prior to it, so people are saying, read your briefs. The EIA didn't rely on that basis, did it? They did not. The answer to my question is yes, they didn't rely on it. It's not over here on Modify's. Explain why you're quiet. That's still on Modify. Under the Modified approach, I think he wins because, remember, I can't get my notes out. I think the most important case is the Brianna Acosta case where the court cannot look to the plaintiff's aliquot in order to find that it was either prong one or two, but in the Modified categorical approach, with the intent to defraud. And he could if he said, I'm stating to have one or count three, but he didn't, or section, such and such, or section, such and such. Right. He don't cite a specific subsection under which he was convicted. If you look. Is there another problem, too, which is that he didn't? In order to be convicted under one, he had to have an intent to defraud, and he never said he had an intent to defraud. Yes. I was going to point that out on page 37 of the Certified Administrative Records. If you look at the plain colloquy, the words intent to defraud or any kind of fraud are never used. The verbs are utilized, used for, or claiming himself out, whatever that means, but there's no fraud or intent to defraud defined in the plain colloquy. And as the court has mentioned in the Brianna Acosta case, it can be very problematic to look to the plain colloquy in order to supply that missing information of which prong he was actually convicted of. The AI-8 does it. I think it looks at the plain transcript contrary to this court's precedent in Brianna Acosta, and I think that is a good reason why. And we put it out in our December 2nd 28-J letter brief why this case should be remanded, because you really can't tell whether it's an A-1, A-2, or for that matter, A-3, since it is an overbroad statute under the categorical approach. I think he prevails under the modified categorical approach. He also prevails equally. Lastly, the PIA is already in. What are we remanding for? You don't have to remand. I think the court could rule under the modified categorical approach that you can't tell that it's a C-I-M-T or not, so he prevails. Well, what else would we do? I understand we said after remand of urgency, whether he's eligible for relief or whether he's already granted relief. But as to his eligibility, what would the question be that we would remand on? The issue would be for relief or the remand under the court could rule that under the modified categorical approach, it's not a C-I-M-T. And therefore, we're just remanding as to relief. Yes, correct. Also, prior counsel submitted, as the court noted, the plain transcript on the appeal. The PIA looked at that for the factual basis to try to tell which problem he pled under. I think incorrectly, it showed that it was problem one or two. And again, contrary to Ria Costa's supplied missing information, the colloquy, which I think runs contrary to what the Supreme Court said in Dekam and his court said in Ria Costa. Also, as I mentioned, the PIA and the IJ considered all this information prior to three Supreme Court decisions in Montclair, Dekam, and Mathis. The IJ initially said that all three problems are C-I-M-T's. The PIA reverses it and says, well, the third problem's not. And there's just kind of a mess of the record. I think it would be obviously the best thing from the petitioner's point of view would be to find that it's not a C-I-M-T remand for relief or to remand and let the immigration judge in the first instance look to the record evidence and see whether there's any hemorrhage possible or not and make a decision whether there's a C-I-M-T or not and whether or not he's eligible for relief or any other relief he might have become eligible for since the time of the case. That's all I have on argument. If there's any questions, thank you. We'll have a question for Mr. Ria Costa. Thanks. Good morning, Your Honors. Dan Sham on behalf of the United States government. This is our position that we believe that the government will prevail on both the modified and the categorical. To answer your question earlier, Judge Perzon, we believe the court does have jurisdiction to look at the categorical analysis because though the board did find that it was not a categorical match, we believe that this is a truly legal question and the court can look at it. I'm sorry. It's a truly legal question, and it's not over the interpretation of an IIA statute. The court can look at it if it wishes, and we do believe that. And then if our understanding is that our law about categorical approaches and the relationship to the board is that the question of what the statute is, the state statute is not committed to the expertise of the board, but the issue of what the federal statute, as part of our interpretation, is. So how could we decide this initially without sending it to the board? Because it still involves interpretation of the state criminal statute. And it involves that, but it also involves an interpretation of the federal criminal moral interpretation statute. Yes, Your Honor. I am surprised to hear you, as a lawyer for the board, standing up here and just telling us we should decide something that the board hasn't decided. Right, Your Honor. And it was with consultative problems, along with my colleagues, that we decided that looking at the statute more carefully, we believe that A1 and A2 clearly are CIMTs because they include the element of fraud. But why not A2? But why not A3? There's still the second prominent of all, though, because, Your Honor, where if it involves knowingly making false representations to obtain something of value, that, too, is categorically CIMT. So we believe that A3 would meet both of those problems because it involves an assumption of a false identity and or the access to property, which is something of tangible value. Did you argue that categorically? We did not, Your Honor. Why should we hear that argument? We didn't even look at that question today, Your Honor. You don't have to. We still went out to modify, but we're just putting that out there. Something the court has looked at as one of them. If the BIA had decided, and you did not address it in your brief, but you want us to decide it on our own. As an alternative ground for dispute proceeding, Your Honor. Certainly, Your Honor. Under the modified categorical approach, we believe that the statute 13-2006 is divisible. We believe that Marcia Acosta doesn't foreclose the look at the psychology section. We believe that the order of the record is not clear from the plea agreement itself, Your Honor. From the plea agreement? From the plea call for the colloquy. We believe she does not stay in the colloquy that is A1, A2, or A3, but we believe that if you look at the colloquy, it's very similar actually to the one of Marcia Acosta where it doesn't line up exactly with the particular conviction charge. Marcia Acosta, he was charged under Arizona Revised Statute 13-1203, and what his plea agreement stated was that he had used a metal pipe or bat to strike someone, and the court looked at that particular fact of predicate to determine it couldn't have been A2 under that Arizona statute or A3. It must have been under A1. Marcia Acosta was basically the application of the modified categorical approach on two fronts. So it was first to determine whether it was A1, A2, or A3, and then the government wanted to further divide the statute by looking at A1 and looking at the METS-RAEA requirement and saying that those were separate elements or separate offenses, and the court, I believe, readily held that those were different means of committing the same offense. Right. But you're focusing on the facts. You're not supposed to focus on the facts. It might take hours. Right? Right, Your Honor. So how do we get to where you're saying? We've held pretty clearly that we need to focus on the elements instead of the facts, and it seems here, like this plea bargain context, the defendant often has very little incentive to contest facts. I think I see where you're going to try to eliminate the other possibilities, but it seems like the defendant in these criminal cases have very little incentive to contest facts that are not elements of the charged offense and may not want to make superfluous sort of factual allegations. So why would maybe an additional reason why the camps came out the way it did? So I'm trying to figure out why you're citing that charge. So because we believe that what the camps and Amathus and his progeny hold is that you cannot look at any facts whatsoever. You need to look at the facts that are essential for upholding the conviction, and in this case, I'm sorry. Go ahead, Your Honor. Well, the one thing he didn't, an element of thing of one and two is an intention to fraud. Yes. He didn't acknowledge that. He didn't say anything about it. He said he used it to get employment, but he didn't say he intended to fraud anybody. His plea is completely consistent, for example, with an employer who was in cahoots with him, right? In other words, an employer who said, you know, I don't know that this was a false statement, and he didn't say otherwise. Right, but there are other elements in A-2 and A-3 which are not present. In this case, he doesn't contest that it's not A-2 because he didn't use it. Well, I understand that, but he didn't establish the elements of A-1 either or A-2. He didn't, did he? I disagree. Under D. Martinez, Your Honor, I believe the facts are identical to what we said in our 28-J letter. It was a 2014 decision, and it was almost the same exact facts. He was using a Social Security number in order to obtain employment, and they similarly argued there on page 825 that the conviction does not categorically involve moral turpitude because he used a false Social Security number in order to obtain employment. Now, if I may, Your Honor, if there is no mention of intent to defrauding anybody, the court in that case held that that was categorically a CIMT under A-1. It's unclear what he was charged with, but it's the same facts as this case, Your Honor. In both cases, they used a false Social Security number, someone else's, in order to obtain employment. The statute in D. Martinez, if I have the right case, said that he had a false intent to use intent to defraud another individual. It's the same statute, Your Honor. It's 13-2006-A-1. Oh, sorry. Are you just reading the statute? Oh, I see. Right. It's the same one. It's the same exact statute as in our case. Okay, but it was A-1, right? It's unclear whether that was what he was charged with. It was A-1, a false A-1. Right. But it's unclear whether they matched the facts to A-1 or whether it was just A-1. But, again, we're not saying that Martinez is positive on the factual basis, but I think it's pretty illustrative because it's the same set of facts. However, we feel that crimes requiring proof of an intent to defraud necessarily do not constitute a criminal charge. He never admitted to an intent to defraud. And that's a common one. He didn't use the exact words, intent to defraud. He didn't use the exact words at all. Obviously, social security numbers don't belong to my client. He had no right to use that. Correct, but that's different in an intent to defraud. It's that you are misrepresenting somebody who relies on it and loses something by it, and there's no element of that. But your Honor, I still think that it's implicit in the crime itself. Which is your best argument, that you think it's implicit in the crime itself, because it seems like we have to look to see whether or not the element fits. Yes, Your Honor. But, yeah, again, we would point you to other decisions in which the facts aren't exact. There's presumed there's no reason why Arizona has a separate statute for this. In other words, why A1 and A3 are different, right? Yes. And what appears to be different about it is that A3 doesn't have an intent to defraud element. Yes, Your Honor. In other words, if you go in and your employer perfectly well knows you're using a false identity,  Yes, Your Honor. but it doesn't have the intent to defraud you. Right. Right. And so, again, Your Honor, the fact that the proceeding in the plea court has to support the charge itself. It doesn't. Right, but it doesn't support A2 or A3, clearly. It doesn't support any of them, so we don't know it. That's what you're saying. Your Honor, even if that were the case, we still think that this case needs, if you want something on the inconclusive record issue, we'd be happy to provide that, but this is not a removability ground. This is a ground for release from removal, and so if Your Honor decides that this is an inconclusive record under Young, I would believe that this case would still end up with the petitioner unable to meet his burden of proof. I'm sorry, I don't understand. Can you explain what you're asking? So if the governor is trying to remove the petitioner on this ground, if he's a lawful permanent resident or he has a status otherwise, we bear the burden of proof showing that this is categorically a stand-in deal or otherwise removable offense, but if the record is inconclusive under this court's compound decision in Young, the burden of proof is on the petitioner because he's removable regardless of this form of release, and so he bears proof, so he's eligible for release from removal. Would it also include showing that this is not categorically a stand-in deal? Okay. Your time is up. Thank you very much. Yes, Your Honor. Would you like me to use any other issues? I have an additional item that I'd like to just mention. I don't know if you, Martinez, the court seems to have analyzed, and I think you've already pointed out, Judge Peruzza, that it was an 8-1 analysis. It's not a 13-206 analysis, but the court specifically cited that immigration judge, the board, looked at 13-206, 8-1, and finding that there was a CIMT with the intention to fraud element, and it wasn't the entire stash of those, and it was just an 8-1 prompt, which we don't have in our case. Okay. Thank you very much. Thank you.
judges: Hawkins, Berzon, Murguia